*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0104p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

CARRIE M. WARF,

        *Plaintiff-Appellant,*

     *v.*

UNITED STATES DEPARTMENT OF VETERANS
AFFAIRS,

        *Defendant-Appellee.*

No. 11-2570

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:09-cv-14402—Avern Cohn, District Judge.

Argued: December 6, 2012

Decided and Filed: April 11, 2013

Before: MARTIN and GRIFFIN, Circuit Judges; BECKWITH, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** William G. Tishkoff, TISHKOFF & ASSOCIATES PLLC, Ann Arbor, Michigan, for Appellant.  Vanessa M. Mays, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** William G. Tishkoff, Jennifer L. Brant, TISHKOFF & ASSOCIATES PLLC, Ann Arbor, Michigan, for Appellant. Vanessa M. Mays, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

_____

[*]The Honorable Sandra S. Beckwith, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

--------------------

**OPINION**

--------------------

BOYCE F. MARTIN, JR., Circuit Judge. Carrie Warf appeals the district court's grant of summary judgment in favor of the Department of Veterans Affairs on her discrimination claims. Warf alleges a hostile work environment, gender discrimination, retaliation, and an Equal Pay Act claim under Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e) *et seq.,* and the Equal Pay Act, 29 U.S.C. § 206(d)(1). For the reasons that follow, we affirm the district court.

I.

In July 1997, Warf began working for Veterans Affairs in the Psychology Service as a program assistant to Dr. Kenneth Adams, Chief of Psychology in Ann Arbor. In 2004, a specialist from Human Resources performed a desk audit of Warf's position and concluded that Warf was performing duties that warranted the salary of an employee with GS-7 status on the government pay scale, a step higher than her GS-6 status. The auditor recommended upgrading Warf's position description to a GS-7. Between 2004 and 2008, Warf requested promotions to a GS-7, and Dr. Adams submitted these requests, but "the process of changing the [position description] and upgrading the program Support Assistant position" took time.

In 2007, the Psychology Service and Psychiatry Service merged into the Mental Health Service and in May 2008 Warf's immediate supervisor became Christa Stoiber, the Administrative Officer for Mental Health. In June 2008, Warf filed a complaint with the Equal Employment Opportunity Commission alleging that Veterans Affairs had discriminated against her by failing to promote her to a GS-7. In October 2008, the director of the Veterans Affairs hospital retroactively promoted Warf and Warf received back pay from April 2005 until October 2008.

In July 2008, Veterans Affairs posted, internally and externally, a position called the Education Program Specialist position, which was listed as a GS-9 to GS-11

position. The position description said the Education Program Specialist would provide professional training and continuing education for Veterans Affairs staff, and also oversee the department's interns, a duty previously undertaken by Warf. Internal applicants within two pay grades of the position could apply internally but Warf, as a GS-6, had to apply as an external candidate.

Warf's application, along with thirteen other applicants, was submitted to the selection committee—a group of four women and two men, including Warf's supervisor at that time, Christa Stoiber. The committee selected four or five candidates to interview and after interviews recommended one female candidate and one male candidate to the selecting officials. The committee did not select Warf for an interview. Veterans Affairs selected the male candidate, Timothy DeLong, for the Education Program Specialist position at a GS-11 level. DeLong is "a veteran, has a master's degree in education, and previously taught education courses at the university level." During this period of time Warf held an associate's degree.

There are three incidents relevant to the hostile work environment claim. First, in August 2007, Dr. Adams hosted a party for the psychology interns and Warf did not attend because of an illness. Dr. Adams called Warf on her cell phone and asked why she was not at the party. Warf felt that Dr. Adams "inappropriately hounded" her during this call. Second, in February 2008, a psychology intern, Pierce, told Warf about an incident of sexual harassment that occurred with a clinical psychologist, Dr. Lawrence Perlman. Warf told Pierce to let Dr. Adams know and Dr. Adams met with Pierce and Dr. Perlman. Dr. Perlman received verbal counseling, a written reprimand, and had to review the sexual harassment policy at the hospital. In April 2008, Dr. Adams asked Warf not to speak to other co-workers about active investigations of other employees. Finally, during Warf's time at Veterans Affairs, a number of women either complained of improper comments or brought sexual harassment claims against some of their male superiors, in particular, Dr. Perlman, Dr. Brian Martis, and Dr. Sri Mahapatra. These complaints led to two female doctors transferring to different Veterans Affairs facilities.

In March 2009, Veterans Affairs notified Warf that it was transferring her office to an administrative suite. Veterans Affairs transferred Warf's telephone and computer lines to the new office in April 2009.

In November 2009, Warf sued Veterans Affairs in the Eastern District of Michigan, claiming Veterans Affairs created a hostile work environment, discriminated against her because of her gender, retaliated against her for filing a claim with the Equal Employment Opportunity Commission, and violated the Equal Pay Act. Veterans Affairs moved for summary judgment and the district court granted the motion, finding Warf had failed to provide evidence to support any of her claims.

## II.

This Court reviews a district court's grant of summary judgment de novo. *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 648 (6th Cir. 2012). Summary judgment is proper if the materials in the record "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When evaluating the evidence, we must draw all inferences in favor of the non-moving party. *Spees v. James Marine, Inc.*, 617 F.3d 380, 388 (6th Cir. 2010) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). To defeat a motion for summary judgment a plaintiff "can no longer rely on the conclusory allegations of its complaint." *Daily Press, Inc. v. United Press Intern.,* 412 F.2d 126, 134 (6th Cir. 1969).

## III.

The district court held that Warf had not advanced sufficient evidence to support finding a hostile work environment, noting that Warf had not proven the conduct she complained of was related to her gender; instead, the district court found that the conduct was "ordinary workplace friction." On appeal, Warf argues that the district court failed to consider the depositions of other women who had complained about sexual harassment in the office. We agree with the district court.

Title VII protects employees from a "'workplace [ ] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . .'" *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 514 (6th Cir. 2009) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  To prove a hostile work environment claim, a plaintiff must establish that:  (1) she was a member of the protected class; (2) she was subjected to unwelcome harassment, based on sex; (3) the harassment had the effect of unreasonably interfering with her work performance and created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer.  *Grace v. USCAR,* 521 F.3d 655, 678 (6th Cir. 2008).

Regarding the third element, our standard is that the conduct must be "severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000).  Some factors we consider include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Id.* (quoting *Harris*, 510 U.S. at 23).  A "work environment viewed as a whole may satisfy the legal definition of an abusive work environment . . . even though no single episode crosses the Title VII threshold." *Williams v. General Motors Corp.*, 187 F.3d 553, 564 (6th Cir. 1999) (quotation omitted).  Harassing behavior need not be sexually explicit and we must consider "*[a]ny* unequal treatment of an employee *that would not occur but for the employee's gender*." *Id.* at 565–66 (emphasis in the original).

We may also consider general sexual harassment in the workplace and find probative remarks or actions taken against women generally, which may not be demeaning to any one in particular. *Jackson v. Quanex Corp.*, 191 F.3d 647, 661 (6th Cir. 1999). Evidence of other sexual harassment claims may help support a hostile work environment claim, but evidence of harassment to others does not weigh as heavily as

evidence directed against the plaintiff. *Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134, 1141 (7th Cir. 1997).

Warf cannot meet the third element. Warf bases the majority of her hostile work environment claim on the argument that other women in the office were bringing sexual harassment claims against doctors. Warf cites to depositions of other female doctors which reveal the Veterans Affairs office had several sexual harassment cases pending and past problems with harassment, but the harassment was not perpetrated by anyone with whom Warf worked. The harassment claims referred to in the depositions stemmed entirely from the actions of two doctors, and Warf admits she did not work with either doctor.

Warf also tries to support her hostile work environment claim by alleging multiple instances of mistreatment; however, she only provides evidentiary support for two incidents. In the first incident, in 2007, Dr. Adams called Warf after she failed to attend his intern party. In the second incident, in 2008, Dr. Adams told Warf not to speak with Pierce about Pierce's sexual-harassment claims. It is not unreasonable for a supervisor to ask his assistant to refrain from talking about another employee's sexual harassment claims. Nor has Warf provided any evidence to show that a reasonable person would find that there was frequent, severe, or offensive harassment. Considering the totality of the circumstances, Warf has not met her prima facie case—she has not provided sufficient evidence to show that the incidents amounted to harassment based on her gender.

IV.

Warf argues that Veterans Affairs' failure to hire her as the Educational Program Specialist amounts to gender discrimination under Title VII. To prove a prima facie case of gender discrimination a plaintiff must prove: (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the same time her request for promotion was denied. *Nguyen v. City of Cleveland*, 229 F.3d. 559, 562–63 (6th Cir.

2000).    The burden then shifts to the defendant to provide a legitimate, nondiscriminatory reason for promoting the other employee. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).    Once the employer has provided a nondiscriminatory reason for its actions the burden shifts back to the employee to show that the reason is pretext for discrimination.  *Id.*

Warf does not provide enough evidence to establish a prima facie case of gender discrimination.  Warf argues that Veterans Affairs' failure to "timely promote [her] grade scale status to at least a GS-7" denied her the opportunity to be properly considered as an internal candidate for the Educational Program Specialist position. However, Warf provides little support for her position and instead makes conclusory statements, arguing that her promotion to a GS-7 was "clearly delayed . . . to cause Ms. Warf the substantive adverse employment action of not being selected for the [Education Program Specialist] position."  Warf does not address whether she and DeLong had the same qualifications; she only argues that the position did not require the candidate to have a master's degree.

Despite Warf's insistence, Veterans Affairs' failure to hire her for the Education Program Specialist position does not amount to gender discrimination.  Quite simply, DeLong and Warf did not have the same qualifications—DeLong held a master's degree in education and had taught at a university for several years, while Warf held an associate's degree.  Everyone interviewed by the hiring committee had a master's degree.  Warf has not shown that she was qualified for the position, and thus, she has failed to establish a prima-facie case of gender discrimination.

Even if Warf could meet her prima facie burden, she cannot prove that Veterans Affairs' proffered reason is pretext.  Veterans Affairs said they did not hire Warf because the selection committee made its decision based on the education and experience of the candidates presented to them.  Warf argues that Veterans Affairs' assertion that it hired DeLong based on education and experience is an excuse  meant to cover up Veterans Affairs' discriminatory conduct of delaying her promotion until after the vacancy announcement for the Education position.  Warf provides no actual evidence of how the

delay in her promotion is linked to the position posting, nor does she show how the delay in her promotion could be discriminatory. Warf's gender discrimination claim therefore fails.

V.

Warf claims that Veterans Affairs restricted her ability to apply to the open Education Program Specialist position in retaliation for her filing an employment action the month before. To establish a prima facie case of retaliation, a plaintiff must establish that: "(1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Nguyen*, 229 F.3d at 563. The defendant may then rebut the prima facie case by showing a valid reason for its actions. *Polk v. Yellow Freight Sys., Inc.*, 876 F.2d 527, 531 (6th Cir. 1989). Then, the plaintiff must show that the defendant's reason is pretext. *Id.* The burden at all stages of the retaliation analysis rests on the plaintiff. *Id.* Temporal proximity is not enough to prove a causal connection and must be considered in conjunction with other evidence. *Nguyen*, 229 F.3d at 565–66.

Here, Warf argues that she has established a prima facie case because she filed a complaint with the Equal Employment Opportunity Commission in June 2008, some of Warf's supervisors knew she had filed a complaint, and within a month Veterans Affairs posted the Education Program Specialist position, a position she was not allowed to apply for as an internal candidate because she had not yet been promoted to a GS-7 salary position. The district court found that Warf did not have any evidence to support a prima facie case because "four of the members of the selection committee reported they had no knowledge of her EEO activity" and because the "selection of DeLong . . . was based on his credentials." We agree with the district court.

Here, Warf submitted the complaint in June 2008 and, one month later, Veterans Affairs posted a position which Warf could not apply for as an internal candidate because applicants had to have a salary of a GS-7 or higher. While there is close

temporal proximity, Warf does not provide any other evidence showing that the posting of the position with salary restrictions was retaliatory. While some of Warf's supervisors had notice of her pending complaint, only one of the supervisors was on the selection committee for the position and the rest of the selection committee did not have any knowledge of her complaint. Furthermore, the selection committee considered Warf for the position, thus there is no indication that her ability to apply as an internal or external candidate hindered her ability to be chosen for the position.

Veterans Affairs argues that it did not hire Warf because it was presented with a better-credentialed candidate. Warf attempts to prove pretext by making a conclusory claim that Veterans Affairs intentionally failed to promote her to a GS-7 until after the position was posted. There is no support for this claim and Warf fails to show that Veteran Affairs' failure to promote her stemmed from discriminatory animus—even if Warf had been promoted, the other applicants still had superior credentials.

Warf also claims that, in retaliation for filing a second complaint, Veterans Affairs retaliated against her in April 2009 by disconnecting her phone line and moving her to a different office where she would be in close proximity to her male superiors. This argument fails. The parties' joint submission of material facts filed in the district court states that, in March 2009, Veterans Affairs informed Warf that it was moving her offices to an administrative suite and the result was that, in April 2009, it transferred Warf's computer and telephone lines. This was not a sudden retaliatory action, but part of an administrative consolidation of which Warf had notice.

VI.

Warf claims that Veterans Affairs paid DeLong more money to fill a position with duties that were substantially the same as her own. To prove an employer has violated the Equal Pay Act, a plaintiff must show that the employer paid an employee of the opposite sex different wages "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). "Equal work" does not require the jobs to be identical. *Beck-Wilson v. Principi*, 441

F.3d 353, 359–60 (6th Cir. 2006). Once a plaintiff has proven her prima facie case, the burden shifts back to the defendant to provide one of four affirmative defenses: "(1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex." *Buntin v. Breathitt Cnty. Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998).

Warf fails to make out a prima facie case that Veterans Affairs violated the Equal Pay Act, and Veterans Affairs provides a compelling defense. Warf does not provide any evidence that she and DeLong performed substantially similar jobs, nor does she address DeLong's professional background. While Warf is correct that some of DeLong's work overlapped with hers, his position only took on the internship-related duties Warf had been undertaking. Otherwise, the Education Program Specialist position was intended to help implement professional development training and continuing education for the psychology department. Warf's position was that of an administrative assistant to Dr. Adams, which did not encompass any education or training responsibilities. Furthermore, a person's salary on the GS pay scale is influenced by his or her experience and educational background. There is a significant difference between DeLong, who held a master's degree in business and had seven years of experience teaching, and Warf, who was working towards her bachelor's degree but at the time held only an associate's degree. Given the evidence presented, Warf's equal pay claim fails.

VII.

For these reasons, we affirm the judgment of the district court.