**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 13a0877n.06**

**No. 13-5010**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

Oct 08, 2013

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MARIE ELAINE REYNOLDS, THEODORE HARRIS, III, and other employees similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | ON APPEAL FROM THE UNITED |
| | ) ) | STATES DISTRICT COURT FOR THE |
| v. | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| FEDERAL EXPRESS CORPORATION, dba Fedex Express, | ) ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: DAUGHTREY, COOK, and WHITE, Circuit Judges.

COOK, Circuit Judge. Theodore Harris and Elaine Reynolds appeal the grant of summary judgment to the Federal Express Corporation on racial discrimination and retaliation claims. Harris also appeals the grant of summary judgment to FedEx on a hostile-work-environment claim. For the following reasons, we affirm.

I.

Until defendant FedEx terminated their employment in 2008, plaintiffs Harris and Reynolds worked in a group that coordinated the maintenance of FedEx's Airbus aircrafts. The parties dispute the facts surrounding the firing, but because the district court granted summary judgment to FedEx,

we describe the facts in the light most favorable to the plaintiffs. *See CareToLive v. FDA*, 631 F.3d 336, 340 (6th Cir. 2011).

A few months before FedEx terminated the plaintiffs' employment, Harris, a black male, met with his supervisor, Karl Schafer, and a coworker, Roger Nallick, to discuss alleged harassment from Nallick. Harris had heard from a coworker that Nallick "did not like black people working for FedEx," and Harris told Schafer that Nallick "was racially harassing him" by calling him (either directly or through coworker) a "scab," "piece of shit scab," or "scab motherfucker." "Scab" refers to someone who goes to work despite a workers' strike and indeed, Harris had crossed a picket line while he and Nallick worked for a previous employer. During the meeting, Schafer told Nallick that FedEx does not tolerate discrimination but advised Harris to "let it go." A week later, Nallick called Harris a "scab nigger" at work. Shortly afterward, Reynolds, a Caucasian, confronted Nallick about his behavior and told him that he and Harris should meet with Schafer again to work out the hostile situation. Nallick responded that Harris "would just play the race card" and nothing would be done. Another employee, Randy Allman, was listening and nodded his head in agreement with Nallick's comment that going to Schafer would be futile.

A month later, Allman sent an anonymous letter to Human Resources alleging that the plaintiffs repeatedly missed work without authorization. In the Airbus workgroup, employees maintained a work schedule on a computerized spreadsheet; because all 130 employees could freely make changes to the document, one employee called it "just a free for all amongst the employees."

Reynolds and Harris worked the night shift, and their schedule overlapped three nights a week, so theoretically one could cover duties for the other three times a week. In his letter Allman alleged that the plaintiffs "were failing to show up for work" typically on a night their schedules overlapped and not calling in or documenting the absence. Allman also accused Schafer of "failing to properly manage the workgroup or stop the fraudulent activity."

Because the anonymous letter implicated Schafer, FedEx enlisted Schafer's supervisor, Mike Smith, to investigate the allegations against Reynolds and Harris. Over the next month, Smith prepared a spreadsheet comparing the work schedule with evidence of the plaintiffs' attendance, including computer login activity, badge access to the facility, and shift notes. The spreadsheet revealed 20 absences for Reynolds and 23 for Harris, typically on nights their shifts overlapped. Smith, contemplating firing the plaintiffs, suspended Harris and Reynolds with pay while he completed his investigation.

When Smith confronted them with news of the suspension, Harris and Reynolds responded by reporting Nallick's harassment of Harris. Harris also admitted taking off four days without documenting them on the schedule but claimed that a coworker gave him permission. Reynolds admitted taking four days off but assumed she could because Schafer had allowed two other coworkers to do so and told the rest of the group that they could do the same when manpower allowed. Unpersuaded by these explanations, Smith fired Harris and Reynolds 20 days later.

Harris and Reynolds sued FedEx, claiming that it fired them because of race or in retaliation for reporting racial harassment, in violation of Title VII. *See* 42 U.S.C. §§ 2000e-2 (racial discrimination), 2000e-3 (retaliation). They pursued two theories relevant here. First, they alleged that Allman and Nallick retaliated against them by sending the anonymous letter and instigating the investigation into their absenteeism. Acknowledging that Allman and Nallick did not and could not fire them, the plaintiffs relied on the "cat's-paw" doctrine of employer liability established in *Staub v. Proctor Hospital*, 131 S. Ct. 1186 (2011). *Staub* held that "if a [non-decisionmaking] supervisor performs an act motivated by [discriminatory] animus that is intended by the supervisor to cause an adverse employment action, and if that act is proximate cause of the ultimate employment action," the employer may be liable for discrimination. *Id*. at 1194 (alteration omitted). And recognizing that Allman and Nallick did not supervise them, the plaintiffs argued that *Staub* extends to coworker misconduct. Second, the plaintiffs alleged that Smith fired them because they reported Nallick's harassment to him. Harris also claimed that his supervisors tolerated a racially hostile work environment.

The district court granted summary judgment to FedEx on all counts. The court reasoned that, even if the plaintiffs could prove that Allman or Nallick influenced their firing, *Staub* applies only to supervisor misconduct. Moreover, Harris and Reynolds could not establish the causation element of their retaliation claim because Smith contemplated firing the plaintiffs *before* they complained to him about Nallick's harassment. *See Fuhr v. Hazel Park Sch. Dist*., 710 F.3d 668, 673 74 (6th Cir. 2013) (noting that plaintiff claiming retaliation must prove causation). Finally,

citing the "ambiguity and lack of detail" in Harris's evidence, the court rejected his hostile-work-environment claim. Reynolds and Harris appeal.

II.

The parties dispute whether the cat's-paw theory of employer liability extends to prejudicial coworkers' actions that influence an adverse employment action. We need not reach this question, however, because the plaintiffs cannot prove that a biased coworker influenced their firing. An employer's liability under *Staub* potentially extends only to a non-decisionmaker's act motivated by discriminatory animus and intended to cause an adverse employment action. *See Staub*, 131 S. Ct. at 1194; *Sharp v. Aker Plant Servs. Grp., Inc.*, - - - F.3d - - - - , No. 11-5419, 2013 WL 4038583, at *6 (6th Cir. Aug. 9, 2013); *Davis v. Omni-Care, Inc.*, 482 F. App'x 102, 109 (6th Cir. 2012) (noting that the cat's paw "theory involves circumstances where a seemingly unbiased decisionmaker makes an adverse employment decision that was in part motivated by a biased subordinate "). The plaintiffs offer no evidence showing that Allman, the author of the letter instigating the investigation, harbored discriminatory bias. Just because he apparently agreed with Nallick's comment that Schafer would do nothing about the harassment does not mean he agreed with the alleged racial bias underlying the harassment. Nor do the plaintiffs show any connection between Nallick and the decision to send the letter. Allman did testify that before sending the letter to HR he gave Nallick a copy and that Nallick thanked him for the information. (R. 46-18, Allman Dep. at 17 18.) But this testimony shows at most that Nallick only knew about the letter, and in fact Allman testified that he drafted the letter by

himself. (*Id*. at 17.) Because Nallick undisputedly played no role in the plaintiffs' termination, any discriminatory animus on his part does not apply to the cat's-paw determination. *See Roberts v. Principi*, 283 F. App'x 325, 332 (6th Cir. 2008). Thus the cat's-paw doctrine does not apply here.

The plaintiffs also contend that they can prove the causation element of their retaliation claim because Smith fired them a mere 20 days after they complained to him about discrimination. True, "this Circuit has embraced the premise that *in certain distinct cases* where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise." *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004) (emphasis added); *see also, e.g., Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283  84 (6th Cir. 2012). But this is not one of those distinct cases because Smith undisputedly contemplated firing the plaintiffs    and conducted most of his investigation into their absenteeism    *before* hearing the complaint of discrimination. Smith prepared a spreadsheet in September 2008 comparing the plaintiffs' work schedule with evidence of their absenteeism, wrote a letter dated October 7, 2008, notifying plaintiffs of their suspension, and met with the plaintiffs on October 8, 2008, discussing their suspension. Only at that meeting did Reynolds complain to Smith, who had never before heard about the harassment. That he fired the plaintiffs 20 days later "is immaterial in light of the fact that [FedEx] concededly was contemplating [the adverse employment action] before it learned of [the protected activity]." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (per curiam). Employers "proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of

causality." *Id*.; *Reynolds v. Extendicare Health Servs., Inc.*, 257 F. App'x 914, 919 20 (6th Cir. 2007); *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 584 85 (5th Cir. 2006).

The plaintiffs cannot rely on temporal proximity, therefore, and nothing else shows that Smith fired them because of retaliatory animus. They point to evidence that Smith did not fire Allman and another coworker for taking certain days off, but those workers (unlike the plaintiffs) received advance permission from the manager. (R. 46-1, Pl.'s Disputed Issues of Material Fact, ¶¶ 28 29.) Likewise, that Smith did not impose further discipline for Nallick's harassment beyond requiring online counseling does not suggest bias on Smith's part; Smith reasonably responded to a first complaint of harassment by requiring counseling for the harasser. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998) (employers need only exercise reasonable care to correct harassing behavior); *Wilson v. Moulsin North Corp.*, 639 F.3d 1, 9 (1st Cir. 2011) (a verbal warning "will ordinarily constitute an appropriate response to most instances of employee misconduct").

Even if the plaintiffs could establish a prima facie case of retaliation, they cannot prove that FedEx's stated reason for the firing absenteeism was pretext for discrimination. A plaintiff must show that the employer did not honestly believe the reasons cited for the adverse employment action. *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 705 (6th Cir. 2013); *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001). A plaintiff may show that an employer does not honestly believe the reasons for its decision because it acted without information or consideration. *A.C.*, 711 F.3d at 706; *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998). Here Harris and

Reynolds offer no such evidence. Sure, the parties dispute accuracy of the facts underlying Smith's decision to terminate the plaintiffs' employment for example, several employees testified to the potential inaccuracy of the work schedule Smith partly relied on, and the HR manager testified that relying on an inaccurate schedule violates the company's fair-treatment policy. But nothing suggests an "error too obvious to be unintentional," *Smith*, 155 F.3d at 807 (quotation omitted), or a sham investigation.

Smith made an informed, reasoned decision to terminate the plaintiffs' employment for taking unauthorized time off. He prepared a detailed spreadsheet comparing the work schedule with objective evidence of the plaintiffs' attendance, including computer login activity, badge access to the facility, and shift notes. All this occurred before Smith met with the plaintiffs and heard about the workplace discrimination. And, after that meeting, the plaintiffs admitted taking multiple undocumented and unauthorized days off work. (R. 46-1, Pl.'s Disputed Issues of Material Fact, ¶¶ 28, 31.) Moreover, one coworker (besides Allman and Nallick) told Smith during an interview that they believed the plaintiffs had been taking unauthorized time off work. (R. 51-4, Bunker Dep. at 24 26.) No jury could reasonably infer pretext from this investigation. *See Smith*, 155 F.3d at 807 ("[C]ourts do not require that the decisional process used by the employer be optimal or that it left no stone unturned."); *Fuentes v. Perski*, 32 F.3d 759, 765 (3d Cir. 1994) ("[T]he factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent.").

Harris also presses his hostile-work-environment claim, which requires that he show conduct so objectively severe or pervasive that it created an abusive work environment. *See Harris v. Forklift Sys.*, 510 U.S. 17, 22 23 (1993); *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 626 27 (6th Cir. 2013). Courts consider evidence regarding "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23; *see also Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009). The evidence needs to be specific a plaintiff may not rely on only, for example, "one specific incident of the use of a . . . race-based epithet" over entire span of her five-year employment and an otherwise "total lack of specificity as to verbal abuse." *Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 501 (6th Cir. 2009); *see also Warf v. U.S. Dep't of Veterans Affairs*, 713 F.3d 874, 879 (6th Cir. 2013) (not enough to "alleg[e] multiple instances of mistreatment" while "only provid[ing] evidentiary support for two incidents").

Harris's evidence lacks specificity. He testified at a deposition that "there were times" when Nallick (either directly or through a coworker) called him a "scab" or said that "you people" should not work at FedEx, one time calling him a "scab nigger." But Harris testified about harassment on only two specific occasions. And when asked at his deposition how many times he heard Nallick's comments, Harris responded that "I can't give you a count" never explaining the frequency of the comments, or how the comments affected his work. (R. 46-8, Harris Dep. at 29.) The statute protects against a work environment with hostility so severe or pervasive that it alters the conditions of one's employment. *See* 42 U.S.C. § 2000e-2(a); *Williams v. CSX Transp. Co.,* 643 F.3d 502, 511

No. 13-5010
*Reynolds v. Fed. Express Corp.*

(6th Cir. 2011).  A worker does not establish a hostile-work-environment claim by testifying that "there were times" he faced verbal abuse but specifically identifying only two occasions.

III.

For these reasons, we AFFIRM the judgment of the district court.