**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 13a0939n.06**

**No. 12-6312**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JAMES ELLIS, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Oct 31, 2013 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| SHELBY COUNTY LAND BANK | ) | STATES DISTRICT COURT FOR THE |
| DEPARTMENT, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |

Before:  KEITH and SUTTON, Circuit Judges; BLACK, District Judge.[*]

SUTTON, Circuit Judge.  James Ellis alleged that the Shelby County Land Bank Department retaliated against him because he complained about discrimination.  The district court granted summary judgment in favor of the Land Bank.  We affirm.

I.

James Ellis, an African-American male, began working at the Shelby County Support Services Department as a custodian in 1991.  He worked his way up to a supervisory position, which he held until 2003.  That year he was fired for allowing employees to receive credit for hours they had not worked.  He appealed the decision to the Shelby County Circuit Court.  He also filed a

---

[*] The Honorable Timothy S. Black, United States District Judge for the Southern District of Ohio, sitting by designation.

charge of discrimination with the EEOC alleging discrimination on the basis of race and gender. The EEOC issued a notice of right to sue, but he did not pursue the discrimination claim. In 2006, the circuit court ruled that Ellis had been fired without cause and ordered his reinstatement.

The department reinstated Ellis in September 2006, allegedly telling him that he had been reinstated to his position as a supervisor C. At the end of that year, however, Ellis received an evaluation that listed his occupation as a maintenance helper, not as a supervisor. In mid-2007, he received another evaluation, this time listing his position as a landscape maintenance foreman. In November 2007, he was transferred to a supervisory position with the newly created Land Bank Department.

Ellis's employment at the Land Bank went smoothly until early 2009. Around that time, he spoke to Kathy Ramage, a compensation advisor in the human resources department. Ramage told Ellis that, as of October 2006, all supervisor C positions had been reclassified as supervisor B positions, which carried a higher pay grade. Ramage said that Ellis should have been reclassified in October 2006 because he had been reinstated as a supervisor C. In May 2009, Ellis filed a second charge of discrimination with the EEOC repeating Ramage's statements and alleging retaliation for his prior charge of discrimination. Starting in November 2009, the Land Bank classified and paid Ellis as a supervisor B. The Land Bank also issued him retroactive pay to make up for the difference between his salary and the supervisor B salary for the period between November 2007 and October 2009.

In June 2009, Ellis received a positive performance review but one that pointed out he could do more to avoid equipment failures. He believes someone tampered with his equipment to make him look bad. He also thinks his supervisors set him up to fail by giving him impossible tasks. As a result, he amended his second charge in January 2010 to allege that the Land Bank deliberately hampered his ability to perform his job. In July 2010, the EEOC issued a right-to-sue notice.

In March 2010, Ellis was supervising a crew at a tire recycling facility when he got into a fight with an equipment operator. The facility suspended operations for over half an hour due to the disruption. The Land Bank issued a written reprimand reminding him to act in a professional manner and ordered him to attend anger management counseling. Later that year the Land Bank investigated a report that Ellis had used one of his crews to perform work at his church. It issued Ellis a verbal warning because it could not verify the report. He filed a third charge of discrimination with the EEOC alleging that the disciplinary actions were in retaliation for his earlier charges of discrimination. In January 2011, the EEOC issued a right-to-sue notice.

Ellis filed a lawsuit against the Land Bank and alleged retaliation under Title VII. The Land Bank moved for summary judgment, and the district court granted the motion.

II.

As always, we give fresh review to the district court's summary judgment decision. *Warf v. U.S. Dep't of Veterans Affairs*, 713 F.3d 874, 877 (6th Cir. 2013). And as always, we apply Civil Rule 56 in doing so—drawing all reasonable inferences in favor of the non-movant (Ellis) and affirming the judgment only if no genuine issues of material fact cloud the dispute and the movant (the Land Bank) deserves judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Ellis offers no direct evidence of retaliation. That means we must apply the familiar burden-shifting framework applicable to Title VII claims premised on indirect evidence of retaliation. *Warf*, 713 F.3d at 880. Under that framework, Ellis must establish a threshold claim of retaliation by showing that (1) he took an action protected under Title VII, (2) the Land Bank knew of that action, (3) the Land Bank took an adverse employment action against him and (4) the Land Bank did so because of the protected action. *Id.* Once he satisfies this requirement, the burden shifts to the Land Bank to offer a non-discriminatory reason for its action. After that, Ellis bears the burden of showing that the offered reason is pretextual. *Id,*

Ellis claims that the Land Bank committed four retaliatory acts: (1) It underpaid him from 2006 to 2009; (2) it gave him a written reprimand in 2010 after he was involved in a fight while on the job; (3) it gave him a low performance evaluation in 2010; and (4) it investigated allegations that he used a Land Bank crew to perform work at his church.

For starters, it is not clear whether the last three acts amount to adverse employment actions within the meaning of Title VII. An adverse employment action is one that a reasonable employee would find "materially adverse, which in [the retaliation] context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). An investigation by itself, as opposed to the results of an investigation, does not sound like an adverse employment action. And presumably that is the case when the result of the investigation favors the employee, here with a finding that the employer "could not determine[] the factual accuracy" of the allegation. R.21-7 at 17. Nor is it clear whether a written reprimand or a low evaluation unaccompanied by any change in the worker's terms or conditions of employment would satisfy this test. Ellis claims he was denied a department-wide raise because of the evaluation. But that is wrong. He received the evaluation in September, the department-wide raise went into effect before then (in July), and Ellis received the raise.

But we need not resolve the appeal on this ground. Even if we assume for the sake of argument that all four incidents amount to adverse employment actions and that Ellis has established a threshold case on these claims, he falls short in showing that the Land Bank's explanations amounted to a pretext.

First up is Ellis's claim that the Land Bank underpaid him for three years. As Ellis sees it, he returned to work as a supervisor C and should have received a salary increase when all supervisor C positions were reclassified as supervisor B positions and moved to a higher pay grade. According

to the Land Bank, Ellis was a supervisor C when he was fired, but there were no supervisory positions available when it reinstated Ellis. As a result, it gave Ellis his old salary at the supervisor C level, but he did not perform supervisor C duties so it did not list him in the human resources system as a supervisor C. Later, when the Land Bank transferred Ellis to a supervisory position, he remained at the lower pay grade based on an administrative misunderstanding. Once the Land Bank identified the problem, it adjusted Ellis's salary to the correct pay grade. Ellis also received back pay to cover the time period when he should have received higher pay. The Land Bank maintains that Ellis is not entitled to further back pay because he was not classified as or working as a supervisor from September 2006 through October 2007. There is nothing remotely pretextual about this explanation, and Ellis has not argued otherwise.

Ellis next points to the written reprimand he received after his on-the-job fight. The Land Bank explains that it received an incident report from a Memphis police officer that Ellis and an equipment operator had fought over "the placement of trailers" in the tire recycling facility. R.21-6 at 10. Each man accused the other of initiating the fight. Ellis admitted he was involved in the fight but maintained that he was defending himself. In response, the Land Bank issued Ellis a written reprimand explaining that, as a supervisor, he needed to act "professional[ly] at all times." *Id.* at 19. Ellis filed a grievance in response, and the Land Bank denied the grievance after a hearing, leaving the reprimand in place. Here too there is nothing pretextual about this explanation for the reprimand.

As for the low performance evaluation in 2010, Ellis claims the Land Bank set him up for that evaluation by requiring him to supervise an unreasonable number of crews. The Land Bank's explanation appears in the evaluation itself. Ellis received a "needs improvement" rating for three reasons: (1) his fight with the contractor; (2) the need to "manage supplies and equipment for work crews" more effectively and to improve "monitoring of work crews['] assignments"; (3) and his frequent use of sick leave. R.33-20 at 1–3. At Ellis's performance evaluation meeting, the Land Bank offered suggestions on how to improve his supervision of work crews. And the supervision-related comments were not the tipping point. Ellis would have fallen within the "needs improvement" category even without them. Here too there is nothing pretextual about this explanation or sequence of events.

Ellis, lastly, claims that the Land Bank put him at risk of discipline when it investigated allegations that he had a Land Bank work crew perform construction work on his church. The Land Bank received a report that a work crew was "picking up shingles and cleaning up" at Ellis's church. R.21-6 at 5. A foreman provided a signed statement that Ellis had ordered the crew to perform the work. The Land Bank held a hearing and concluded that it could not verify the allegations. It issued Ellis a verbal warning not to perform or order work without a Land Bank work order. The foreman received an identical verbal warning. Here too this was an eminently reasonable resolution of this complaint, one that was favorable to Ellis to boot.

Ellis responds that the Land Bank's explanations create a genuine dispute of fact that precludes summary judgment, but that is not how burden-shifting works. Ellis cannot defeat

summary judgment by saying, "They have their story, and I have mine." He instead has to show that the Land Bank's explanations are pretext. He has not. He does not point to or analyze any facts that demonstrate pretext; indeed, his brief does not even mention the term. On this record, the district court correctly found that Ellis had not met his burden of demonstrating retaliation and properly granted summary judgment in favor of the Land Bank.

III.

For these reasons, we affirm.