**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0760n.06

**No. 08-5365**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Dec 03, 2009**
LEONARD GREEN, Clerk

ROBIN GORDON,

      **Plaintiff-Appellant,**

v.

GORDON R. ENGLAND, Secretary of the
Navy; DEPARTMENT OF THE NAVY,

      **Defendants-Appellees.**

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE

_____ /

**BEFORE:**    **GUY, CLAY, and WHITE, Circuit Judges.**

    **CLAY, Circuit Judge.** Plaintiff Robin Gordon appeals the dismissal of her Title VII claim of race and sex discrimination against Gordon England, the Secretary of the Navy, and the United States Department of the Navy. The district court dismissed the case for lack of subject matter jurisdiction based on Gordon's failure to file suit within 90 days of the dismissal of Gordon's EEOC complaint. Gordon argues on appeal that she is entitled to equitable tolling due to the inadequate performance of her attorney. For the reasons set forth in this opinion, we **REMAND** the case to provide Plaintiff an opportunity to amend her complaint to sufficiently allege facts that would entitle her to equitable tolling and to permit the district court to decide whether Plaintiff should be entitled to equitable tolling.

**PROCEDURAL BACKGROUND**

Robin Gordon was a civilian employee of the United States Department of the Navy in Millington, Tennessee. On October 27, 2000, Gordon filed an Equal Employment Opportunity complaint against her supervisor, Ron Rossman, alleging racial harassment and reprisal (EEO Complaint I). On June 19, 2001, while EEO Complaint I was still pending, Gordon filed a second EEO complaint that restated her earlier claims and added a claim for sex discrimination based on sexual harassment (EEO Complaint II). The New Orleans EEO office entered an acceptance of EEO Complaint II and investigated the sexual harassment charge. The case was assigned to an Administrative Law Judge ("ALJ") in the Memphis EEOC office.

On October 21, 2002, the Navy issued a final agency decision ("FAD") on EEO Complaint I, denying the complaint. The FAD advised Gordon that she had thirty days to file an appeal with the EEOC and/or ninety days to file suit under Title VII. On June 27, 2003, 249 days after the FAD, Gordon did file a suit (Title VII Complaint I) in the United States District Court for the Western District of Tennessee. The complaint, filed by attorney J.M. Bailey, named Secretary of the Navy Gordon England and the Department of the Navy as defendants. The case was dismissed without prejudice on November 8, 2003 for failure to provide effective service on Defendants within 120 days. The district court also noted that Gordon failed to respond to an order to show cause.

On April 22, 2004, the EEOC dismissed EEO Complaint II because it had received from Mr. Bailey a letter dated April 21, 2004 "indicating that this action has been filed in Federal Court and that it will be pursued in Federal Court." No copy of the letter allegedly sent by Gordon's former attorney is in the record.

On July 27, 2004, Gordon filed a second complaint (Title VII Complaint II) making nearly identical claims. The complaint was again filed by Mr. Bailey. That case was dismissed on August 22, 2006 based on a motion for voluntary non-suit. On February 27, 2007, Gordon sent a letter to

the presiding judge stating that she had moved to Columbia, South Carolina and was unable to reach Mr. Bailey. Furthermore, Mr. Bailey did not inform Gordon that he had dismissed her case. On March 6, 2007, Gordon filed a motion for reconsideration of the dismissal of Title VII Complaint II. She subsequently filed a motion to withdraw the request for reconsideration, and on March 19, 2007 she filed the present suit *pro se* (Title VII complaint III). This complaint includes the same defendants and grounds for recovery as the previous suits but includes some additional facts. Defendants filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The motion was granted on March 7, 2008. Gordon timely filed a notice of appeal on March 17, 2008 and has been assigned current counsel by this court.

## DISCUSSION

### I. Standard of Review

At the district court, Defendants moved under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss based on two theories: Plaintiff failed to file within ninety days; and this case was merely an attempt to "re-litigate" the previous actions. The district court ruled only on the ninety day requirement and dismissed under Rule 12(b)(1). Technically, the district court should have dismissed under Rule 12(b)(6). *See Mitchell v. Chapman*, 343 F.3d 811, 820 n.10 (6th Cir. 2003) ("It is well-settled that the ninety day right to sue provision is an administrative condition precedent, rather than a jurisdictional prerequisite. Consequently, the court should dismiss the action pursuant to Rule 12(b)(6), for failure to state a claim, rather than Rule 12(b)(1) for lack of subject matter jurisdiction.") (internal citation omitted). When a district court improperly dismisses under Rule 12(b)(1), we may review the record under the Rule 12(b)(6) standard. *See Truitt v. County of Wayne*, 148 F.3d 644, 647 (6th Cir. 1998) ("As it does not make any difference to the outcome of the case, we shall construe the district court's dismissal of Truitt's claims under Rule 12(b)(1) for

lack of subject matter jurisdiction as a dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.").

In reviewing a dismissal under Rule 12(b)(6), we "must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Financial Corp.*, 281 F.3d 613, 619 (6th Cir.2002). It is "well established that conditions precedent are similar to statutes of limitations." *Mitchell*, 343 F.3d at 820. "The determination that a complaint was filed outside of the applicable statute of limitations is a conclusion of law that this court reviews de novo." *Kelly v. Burks*, 415 F.3d 558, 560 (6th Cir. 2005). "A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

Gordon does not contest the fact that her current suit was filed more than ninety days after the dismissal of her second EEO claim by the Equal Employment Opportunity Commission. She argues, however, that the district court erred by failing to apply equitable tolling to her claim. "In this Circuit, we hold that where the facts are undisputed or the district court rules as a matter of law that equitable tolling is unavailable, we apply the *de novo* standard of review to a district court's refusal to apply the doctrine of equitable tolling; in all other cases, we apply the abuse of discretion standard." *Dunlap v. United States*, 250 F.3d 1001, 1007 n.2 (6th Cir. 2001). "Because this court must assume all factual allegations in [Plaintiff's] complaint are true, there are no factual disputes in this case that would preclude de novo review of the equitable tolling issue." *Amini v. Oberlin College*, 259 F.3d 493, 498 (6th Cir. 2001).

## II.    Equitable Tolling

Gordon's complaint makes serious allegations against her former supervisor and other employees of the United States Navy. Gordon alleges that she was racially discriminated against and that she was retaliated against for filing a complaint with the United States Equal Employment Opportunity Commission (the "EEOC"). She alleges that her supervisor promoted all employees in the work unit besides Gordon, cut her lunch time, and subjected her to other indignities.

Even more troubling, Gordon asserts that on March 9, 2001, she suffered an unprovoked physical assault by a co-worker, Nathan Edwards. Edwards put Gordon into a restraint hold position with his hands wrapped around her breasts. Edwards had another worker take a picture of the groping, despite Gordon's protests. Edwards' supervisor was present at the incident and encouraged Edwards in this behavior. The multiple people who witnessed the incident denied it took place until the picture was developed. Despite the presence of the picture, and the subsequent recantation of the witnesses, nobody who participated suffered any disciplinary action, and only Edwards was required to attend sexual harassment training.

Despite many attempts by Gordon to litigate these issues, no court or administrative body has ever reached the merits of Gordon's claims. In large part, this appears to be the result of wholly incompetent legal representation. Since Gordon has proceeded *pro se*, service has been effectuated, deadlines have been met, and this suit was litigated to a final judgment. These seemingly mundane accomplishments achieved by a *pro se* litigant were apparently beyond the abilities of Mr. Bailey, Gordon's retained attorney. Gordon's attorney was indisputably late with filings in multiple actions, failed to properly effectuate service, and abandoned Gordon's suit for no apparent reason. To compound these errors, Mr. Bailey failed in an attorney's most basic responsibility, that of communicating with his client and keeping her informed of the status of her case.

At this point, the Court only has allegations, but if true, the allegations of deficient attorney performance are extremely troubling. Gordon filed two separate EEO complaints. She received a right to sue letter on the first complaint on October 21, 2002. The second charge, which included the sexual harassment allegations and was filed on June 19, 2001, was pending before an ALJ when Gordon first filed suit in federal court. It is unclear when Gordon hired Mr. Bailey, but it was at least as early as the filing of the first Title VII action. That very first Title VII suit was filed late and was dismissed on November 28, 2003 for failure to properly serve Defendants. Even though Gordon's first Title VII suit had been dismissed, Mr. Bailey sent a letter to the EEOC indicating on April 21, 2004 that the action had been filed in federal court and would be pursued in federal court. Not only was no case currently pending, but no Title VII complaint on the sexual harassment charges had ever been properly filed. In response to this letter, the EEOC dismissed the second complaint on April 22, 2004. Gordon asserts that the letter was sent to the EEOC without her knowledge or approval. As a result, a potentially meritorious sexual harassment claim by Gordon was removed from the administrative process.

Mr. Bailey did not respond to the dismissal by immediately filing a second suit. Instead, he waited more than 90 days to file a second Title VII complaint. That case proceeded in federal court until Mr. Bailey filed a voluntary nonsuit that led to a dismissal on August 22, 2006. Plaintiff states that she was never informed that her case was dismissed and only learned of it after contacting the court directly following repeated failures to reach her attorney.

Nothing in the record on appeal indicates a reason for Gordon's attorney's decision to file a motion for voluntary non-suit. The district court docket shows that a status conference was held before the district judge in the case on June 30, 2006. The minute entry states that Plaintiff's attorney advised the court that his supplemental response was prepared and would be filed that day

and that Plaintiff's Rule 26 disclosures would be filed by July 3, 2006. The next filing by Gordon's attorney was neither the response nor the Rule 26 disclosures but instead the voluntary non-suit on July 17, 2006. Gordon asserts that Mr. Bailey never informed her of his decision to file a motion for voluntary non-suit and that he refused to return her repeated phone calls.[1] Eventually, she contacted the district court directly, and the court informed her that her suit had been dismissed. Gordon subsequently wrote a letter to the trial judge alleging misconduct by her attorney before dismissing that case and filing the present action *pro se*.

The Supreme Court has stated that equitable tolling is not appropriate in the case of poor attorney performance for a "garden variety claim of excusable neglect." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). We have previously recognized, however, that an attorney's conduct can be the basis for equitable tolling. *Cantrell v. Knoxville Cmty. Dev. Corp.*, 60 F.3d 1177 (6th Cir. 1995). In *Cantrell*, we held that equitable tolling may be appropriate where a plaintiff "was abandoned by his attorney." *Id*. at 1180. The attorney in *Cantrell* was suffering from a mental illness, but the Court cited with approval *Burton v. United States Postal Service*, 612 F. Supp. 1057 (N.D. Ohio 1985). The district court in *Burton* equitably tolled the statute of limitations where the attorney failed to contact the client following an EEOC interview. The court reasoned that the attorney "seems to have irresponsibly abandoned his client and the case and left town without informing his client." *Id* at 1059; *see also Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236

---

[1] Given Mr. Bailey's alleged conduct in this case, it is hardly surprising that he has a lengthy disciplinary history in Tennessee. Bailey lost his license to practice law in the late 1990s. He was publicly censured as recently as 2007 based on four separate complaints of failures similar to those in Gordon's case, including failure to properly serve process, failure to appear at a scheduling conference, failure to notify a client for six months that the case had been dismissed, and failure to respond to written discovery.

(3d Cir. 1999) (finding a "sufficient claim of attorney abandonment" and applying equitable tolling where an attorney had affirmatively misrepresented that he timely filed a Title VII complaint).

If Gordon's allegations are correct, her attorney's conduct went well beyond "garden variety" neglect. He completely failed Gordon every step of the way in his failure to file the proper documents with the courts, in his failure to timely perform his duties, and in his failure to keep Gordon abreast of the status of her case. Even worse, he aborted an EEO investigation by falsely stating that a Title VII case was proceeding. Then, when he again appeared to be missing deadlines, he filed a voluntary non-suit, effectively aborting Gordon's claim. He took many of these actions without notifying Gordon. On the limited record before this Court, we do not know exactly what the attorney was telling Gordon, but she states that she repeatedly tried to contact him, and she has diligently pursued this case proceeding *pro se*.

The district court considered the possibility of equitable tolling but barely mentioned the issue of Gordon's attorney's conduct. The lack of discussion is not surprising since Gordon's allegations about her attorney's grossly deficient performance were not properly set forth in her complaint. In her brief before the district court, she merely stated that she "was represented and had ineffective Counsel but now the Plaintiff is Pro Se," but made no explicit argument for equitable tolling. The district court had access to Gordon's November 27, 2007 letter to the previous district judge, but it does not appear to have been a part of this record, and the decision made no explicit mention of it in the court's discussion of equitable tolling.[2] The court merely stated that Gordon "mentions" she was "previously represented by ineffective counsel." The issue of Gordon's counsel

---

[2] The letter in the previous case discusses many of the allegations of Mr. Bailey's poor performance that have been brought before this Court. It mentions that before Gordon moved from Memphis, Mr. Bailey informed her that he was working on the case. After she moved, he failed to return her phone calls and never informed her that her case was dismissed. She was also surprised to see that Mr. Bailey had failed to comply with discovery requests.

that was the sole basis for the argument before this Court was barely, if at all, presented to the district court. Therefore, the district court did not have an opportunity to rule on whether Gordon's attorney's deficient performance warranted equitable tolling.

Absent specific allegations in the complaint that would give rise to a claim for equitable tolling, the district court did not necessarily err in dismissing Gordon's initial complaint. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (dismissing a complaint that contained "no allegations of wrongdoing on the part of [Defendant] that could have caused him to miss his filing deadline"). Gordon may bear some responsibility for the failure to properly present her attorney misconduct arguments to the district court, but she was proceeding *pro se* after having been deceived and abandoned by her attorney, and "it is clear that leniency in the strictures of pleading should be shown to *pro se* plaintiffs." *Lawler v. Marshall*, 898 F.2d 1196, 1200 (6th Cir. 1990) (reversing as an abuse of discretion a district court's denial of a *pro se* plaintiff's motion for leave to amend his complaint). "When determining whether to dismiss a *pro se* complaint, these complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Wagenknecht v. United States*, 533 F.3d 412, 415 (6th Cir. 2008) (citations and quotations omitted).

In view of the egregious conduct of Gordon's attorney and her status as a *pro se* litigant, we will remand the case to the district court and allow Gordon an opportunity to amend her initial complaint. When Gordon learned through Defendants' motion to dismiss that her complaint was untimely, her proper recourse was to file an amended complaint that included allegations sufficient to find equitable tolling. Again, Gordon was proceeding *pro se* and was likely to have been unaware of the requirements of Rule 15 of the Federal Rules of Civil Procedure. Therefore, Gordon should be permitted an opportunity to amend her complaint to make the necessary showing to satisfy the standards for equitable tolling.

This course of action may deviate from the default rule, but it is supported by our precedent. Generally, a district court does not abuse its discretion in failing to grant a party leave to amend where such leave is not sought. *Sinay v. Lamson & Sessions*, 948 F.2d 1037, 1042 (6th Cir. 1991). However, we previously remanded a case to allow a *pro se* plaintiff leave to amend where it was not requested in the district court. *Berndt v. Tennessee*, 796 F.2d 879, 882-83 (6th Cir. 1986). *Berndt* expressed "no opinion on whether a remand will be appropriate in every conceivable instance where a *pro se* complainant fails to request for leave to amend, but we feel that a case, such as this, where the claims are of such a serious nature demands that the complaint be closely scrutinized by the district court before it is dismissed in the pleading stage of litigation." *Id*. at 883. In this case, Gordon has raised serious allegations of racial discrimination, retaliation and sexual harassment that include offensive touching witnessed and approved of by her supervisors. These serious allegations merit an opportunity for Gordon to amend her complaint and possibly have the case litigated on the merits.

For a variety of reasons, it is uncertain whether Gordon can maintain a claim for equitable tolling upon further development of the record.[3] For instance, Defendants contest the issue of prejudice, and that argument would have to be weighed and balanced in the context of all the circumstances by the district court on remand. The district court should also consider whether Gordon exercised the necessary personal diligence that courts that have granted equitable tolling

---

[3] In general, this Circuit has identified five factors to consider when determining whether to toll an applicable statute of limitations: 1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000). This list is not exhaustive, and the "propriety of equitable tolling must necessarily be determined on a case-by-case basis." *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998).

based on attorney performance consider necessary. *See Seitzinger*, 165 F.3d at 241 (noting that plaintiff "appears to have been extremely diligent in pursuing her claim"); *Burton*, 612 F. Supp. at 1059 (finding that "plaintiff indeed pursued his claim as diligently as possible"). Since "lack of diligence by a claimant acts to defeat h[er] claim for equitable tolling, [Plaintiff] should be required to present evidence of h[er] diligence in pursuing the claim." *Cantrell*, 60 F.3d at 1180.

We acknowledge that Gordon's litigation has not been diligently pursued to date, but whether the failures were the result of Gordon's inaction, her attorney's incompetence, or a combination of the two is unclear on this record. We simply do not know to what extent Gordon's attorney assured her that deadlines were met or did not apply to her case, or that she should simply trust him to attend to any problems or pending legal notices. In fact, if her attorney misrepresented his compliance with the statutory deadlines, it would further bolster Gordon's claim for equitable tolling. In *Seitzinger*, the Third Circuit applied equitable tolling based in part on an attorney's single failure to comply with a deadline that plaintiff knew about "in broad terms" because the attorney affirmatively misrepresented what he had done. The plaintiff in that case had also received the EEOC's letter advising her of her rights, but the court noted that plaintiff's "putative knowledge may have been eroded by her attorney's misrepresentations." *Seitzinger*, 165 F.3d at 241.

Gordon has made serious allegations against Defendants that, at this stage of the litigation, must be accepted as true. She has been unable to reach the merits of those claims in multiple actions as a result of the egregious conduct of her attorney. Her attorney went so far as to file a voluntary non-suit in pending federal litigation without Gordon's assent and without even notifying her that her case was dismissed. It is to her credit that Gordon has diligently pursued her claim since she began pursuing her case *pro se*. Under these somewhat unique circumstances, Gordon has raised sufficiently serious claims about her attorney's malfeasance that, in the interest of justice, the case

should be remanded to provide Gordon an opportunity to amend her complaint so that the district court could then determine whether she is entitled to equitable tolling. *See Berndt*, 796 F.2d at 882 (remanding to allow plaintiff leave to amend where dismissal "would be a miscarriage of justice").

## CONCLUSION

For the foregoing reasons, we **REMAND** the case to the district court to allow Plaintiff leave to amend her complaint to allege equitable tolling and to permit the district court to decide whether Plaintiff should be entitled to equitable tolling.

**Ralph B. Guy, Jr., concurring in the result**.     I concur in the judgment remanding this case for further consideration of equitable tolling, but cannot join in the opinion because I disagree with the majority's characterization of the admittedly unknown facts[1]; improper emphasis on the seriousness of the allegations made in plaintiff's complaint[2]; and statements that could erroneously be interpreted as findings concerning a) the significance of the withdrawal of the second EEO complaint,[3] b) the alleged egregiousness of counsel's conduct,[4] and c) the asserted diligence on the part of plaintiff.[5]     Also, even in *Seitzinger*, relied upon by the majority, the affirmative misrepresentations of counsel were weighed along with the plaintiff's diligence and her putative knowledge of the filing requirements. *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 241 (3d Cir. 1999).  Despite the majority's focus on allegations of attorney incompetence, this court has consistently considered the following factors in determining the appropriateness of equitable tolling: "'1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing

---

[1]The plaintiff's pro se letter filed in February 2007, indicated only that plaintiff had moved from the area, had been promised that her attorney would prosecute the case, had tried unsuccessfully to contact her attorney at some point, and had learned of the dismissal by calling the court.

[2]While the seriousness of the claim is not a factor we consider, I note that plaintiff indicated that Edwards was discharged when he refused to attend sexual harassment training.

[3]Counsel's letter withdrawing the complaint was not part of the record, nor is it clear that the second Title VII action was untimely given the presumption that receipt of notice occurs within five days after the mailing of the final administrative decision. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557 (6th Cir. 2000).  Also, the first Title VII complaint specifically alleged sexual harassment in violation of Title VII. (Dkt. No. 03-2482, Compl., Para. 14.)

[4]Notwithstanding the speculation concerning attorney malfeasance, the majority acknowledges that it is for plaintiff to prove on remand.  Indeed, plaintiff, who was represented by counsel on appeal, argued only that her attorney had "lapses in communication" and "made tactical decisions that were not in her best interest."  In fact, when the second Title VII complaint was voluntarily dismissed on the eve of a decision on the merits, the case had been pending two years.

[5]Although the majority suggests that plaintiff showed diligence in pursuing her third Title VII complaint pro se, the record is silent concerning whether she diligently pursued her claims in earlier proceedings.

requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000) (citation omitted).