**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0374n.06

No. 12-5897

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
May 26, 2015
DEBORAH S. HUNT, Clerk

ROBIN GORDON,

    Plaintiff - Appellant,

    v.

GORDON ENGLAND, et al.,

    Defendants - Appellees.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF TENNESSEE

OPINION

Before: BOGGS and KETHLEDGE, Circuit Judges; HELMICK, District Judge.[*]

## I.    INTRODUCTION

HELMICK, District Judge. Appellant Robin Gordon appeals the dismissal of her race- and sex-discrimination claims. The district court granted the motion of Appellees Gordon R. England, Secretary of the Navy, and the Department of the Navy, for summary judgment, concluding: (1) the doctrine of equitable tolling should not be applied to Gordon's untimely race-discrimination claims; (2) Gordon was entitled to equitable tolling of her sex-discrimination claim; and (3) nonetheless, the Navy was entitled to summary judgment on Gordon's sex-discrimination claim. For the reasons stated below, we affirm.

## II.    BACKGROUND

We previously heard an appeal in this case, after the district court concluded it lacked subject-matter jurisdiction and dismissed Gordon's complaint under Rule 12(b)(1). *See Gordon v.*

---

[*] The Honorable Jeffrey J. Helmick, United States District Judge for the Northern District of Ohio, sitting by designation.

*England* ("*Gordon* I"), 354 F. App'x 975 (6th Cir. 2009). We incorporate the procedural background

of that opinion below:

> Robin Gordon was a civilian employee of the United States Department of the Navy in Millington, Tennessee. On October 27, 2000, Gordon filed an Equal Employment Opportunity complaint against her supervisor, Ron Rossman, alleging racial harassment and reprisal (EEO Complaint I). On June 19, 2001, while EEO Complaint I was still pending, Gordon filed a second EEO complaint that restated her earlier claims and added a claim for sex discrimination based on sexual harassment (EEO Complaint II). The New Orleans EEO office entered an acceptance of EEO Complaint II and investigated the sexual harassment charge. The case was assigned to an Administrative Law Judge ("ALJ") in the Memphis EEOC office.

> On October 21, 2002, the Navy issued a final agency decision ("FAD") on EEO Complaint I, denying the complaint. The FAD advised Gordon that she had thirty days to file an appeal with the EEOC and/or ninety days to file suit under Title VII. On June 27, 2003, 249 days after the FAD, Gordon did file a suit (Title VII Complaint I) in the United States District Court for the Western District of Tennessee. The complaint, filed by attorney J.M. Bailey, named Secretary of the Navy Gordon England and the Department of the Navy as defendants. The case was dismissed without prejudice on November 8, 2003 for failure to provide effective service on Defendants within 120 days. The district court also noted that Gordon failed to respond to an order to show cause.

> On April 22, 2004, the EEOC dismissed EEO Complaint II because it had received from Mr. Bailey a letter dated April 21, 2004 "indicating that this action has been filed in Federal Court and that it will be pursued in Federal Court." No copy of the letter allegedly sent by Gordon's former attorney is in the record.

> On July 27, 2004, Gordon filed a second complaint (Title VII Complaint II) making nearly identical claims. The complaint was again filed by Mr. Bailey. That case was dismissed on August 22, 2006 based on a motion for voluntary non-suit. On February 27, 2007, Gordon sent a letter to the presiding judge stating that she had moved to Columbia, South Carolina and was unable to reach Mr. Bailey. Furthermore, Mr. Bailey did not inform Gordon that he had dismissed her case. On March 6, 2007, Gordon filed a motion for reconsideration of the dismissal of Title VII Complaint II. She subsequently filed a motion to withdraw the request for reconsideration, and on March 19, 2007 she filed the present suit *pro se* (Title VII complaint III). This complaint includes the same defendants and grounds for recovery as the previous suits but includes some additional facts. Defendants filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The motion was granted on March 7, 2008. Gordon timely filed a notice of appeal on March 17, 2008 and has been assigned current counsel by this court.

*Id.* at 977-78. We then remanded the case to permit Gordon to amend her complaint to seek equitable tolling and to give the district court the opportunity to determine whether the equitable-tolling doctrine applied. *Id.* at 983.

On remand, Gordon alleged the Defendants violated Title VII and asserted claims for (1) hostile work environment due to race discrimination, (2) disparate treatment on the basis of her race, and (3) sexual harassment. She also argued she is entitled to equitable tolling with regard to all of her claims.

Gordon asserts Rossman, her supervisor, discriminated against her because of her race when he (1) overlooked her for promotion while promoting everyone else in her unit; (2) failed to complete her performance evaluation properly; (3) interfered with her, and harassed her for making, leave requests; (4) reduced her lunch break by 15 minutes while maintaining longer breaks for all other employees; (5) harassed her for "her decision to alter her work schedule to a compressed work schedule"; (6) required her to contact the office while out on sick leave; (7) limited her ability to participate in staff meetings; (8) assigned her "additional uncompensated duties"; (9) attempted to make her assume "the duties of two other female employees"; and (10) assigned her duties associated with a higher-ranking position but refused to promote her.

Gordon also asserts she was sexually harassed by her coworkers and that the Navy failed to adequately address the incident. The district court offered the following summary from the Navy's "statement of undisputed material facts":

> Plaintiff claims that on March 9, 2001, she was the victim of sexual harassment while she was in the NMPS Warehouse in Millington, Tennessee. Rossman, Plaintiff's first line supervisor, was absent from work on March 9, 2001. Edward McGrath ("McGrath") was acting supervisor in Rossman's absence that day. McGrath was not in the building at the time of the March 9, 2001 incident. Plaintiff did not report the incident to McGrath upon his return to the building; nor did she report the incident to McGrath at any other time. Rather, a few days after the incident, another employee whose identity is unknown mentioned that Plaintiff was upset because of something that another employee Nathan Edwards ("Edwards") purportedly did to Plaintiff. Plaintiff did not report the March 9, 2001, incident to Rossman until March 26, 2001.

On March 26, 2001, Plaintiff provided Rossman with an oral and written account of her version of what occurred on March 9, 2001. The written submission was signed by Plaintiff and provided that "Nathan [Edwards] grab [sic] me from behind in a restraining hold position. I was yelling to him to get off of me. Nathan yelled (while still holding and restraining me from moving) to Jane take the picture of me and my wife." Plaintiff also complained that all of the NMPS members with the exception of McGrath were present when the incident occurred. Plaintiff identified these co-workers as Nathan Edwards, Jane DeGonzaque, Susan Foster, Shannon Armbruster, Ken Allen, and Rich Rankin. Plaintiff's March 26, 2001, written account stated that as the co-workers who were present during the incident laughed, Edwards held Plaintiff tighter. Plaintiff later gave a detailed statement of her allegations to an EEO investigator. Plaintiff told the investigator that Edwards "grabbed her from behind, put me in a restraint lock position, with his private area on my buttocks and his hands wrapped around my breasts." Plaintiff alleged that others present during the incident chanted "get her, get her." Plaintiff now alleges that this is how she described the incident to Rossman on March 26, 2001. Also Plaintiff reported that one of the co-workers, Jane DeGonzaque, took a picture of the incident while Edwards was holding Plaintiff.

During the March 26, 2001 meeting with Rossman, Plaintiff told Rossman that she wanted Edwards and her co-workers to apologize and that she also wanted assurances that similar conduct would not happen again. In response to Plaintiff's complaint, Rossman held meetings on March 26, 2001, with Plaintiff, Edwards, and Plaintiff's other co-workers in an attempt to investigate the allegations. When Rossman inquired about Plaintiff's allegations, her coworkers gave conflicting accounts of what had happened. However, all of Plaintiff's coworkers denied that the incident was planned or that Jane DeGonzaque had purposely brought a camera to work so that she could get a picture of the incident. All of Plaintiff's co-workers also denied that they chanted or encouraged Edwards's behavior. Rich Rankin reported to Rossman that he was not present in the work area when the incident occurred. Rankin later apologized to Plaintiff because he was told to do so by Rossman and because he wanted to keep the peace at work. Rankin did not consider his apology an admission of guilt.

Later on March 26, 2001, Rossman scheduled a meeting with Plaintiff and Edwards. During the meeting, Edwards apologized to Plaintiff and promised that it would not happen again. Rossman scheduled another meeting on March 26, 2001, with the co-workers whom Plaintiff had reported were present during the incident. Rossman told the employees that Plaintiff felt she deserved an apology from each of them, and Rossman urged them to do so. The co-workers disagreed about Plaintiff deserving an apology from them, yet all of them agreed to make the apology and did so on the morning of March 27, 2001.

Approximately nine weeks after the March 9, 2001 incident, Rossman obtained a copy of the picture taken by Jane DeGonzaque during the incident. Although the photograph was out of focus, it provided an image of Edwards grabbing Plaintiff and holding her in a different manner than the way Edwards had previously described to Rossman in his account of the incident. After Rossman saw the

> photograph, he met with Edwards on May 22, 2001. At that time, Rossman informed Edwards that he would serve a three-day suspension without pay from June 5 through June 7, 2001. Rossman made the decision to suspend Edwards because as a result of further investigation, Rossman concluded that Edwards had not been truthful in his initial statements about the incident. Rossman also directed Edwards to attend the next scheduled class on the prevention of sexual harassment.

*Gordon v. England*, No. 07-2223, 2012 WL 2790375, at *2-3 (W.D. Tenn. July 9, 2012) (citations and footnotes omitted). Subsequently, Edwards was terminated. The Navy asserts he was fired for failing to attend the sexual-harassment-prevention course, while Gordon asserts she was told Edwards was terminated for disciplinary reasons unrelated to the incident.

The district court declined to apply the equitable-tolling doctrine to Gordon's race-discrimination claims. The district court noted Gordon did not file suit regarding EEO Complaint I until well after the 90-day limitations period and concluded the equitable-tolling doctrine did not apply, in part because both Gordon and her attorney received the right-to-sue letter and had actual notice of the filing deadline. The district court also concluded Gordon is entitled to equitable tolling of her sexual-harassment claim, raised in EEO Complaint II. This claim was timely filed but subsequently dismissed after Bailey filed a motion for voluntary nonsuit without consulting or informing Gordon. Following this dismissal, Bailey failed to contact Gordon or return her phone calls. The district court concluded Bailey's course of conduct constituted an effective abandonment of his client and warranted application of the equitable-tolling doctrine. The district court proceeded to examine the merits of Gordon's sexual-harassment claim and granted the Navy's motion for summary judgment, concluding Gordon could not prove she was subjected to a hostile work environment on the basis of her sex because the Navy's response to Gordon's sexual-harassment claims "was adequate and reasonable." *Gordon*, 2012 WL 2790375, at *16.

Proceeding pro se, Gordon filed a notice of appeal and a motion for appointment of counsel. While that motion was pending, she filed her appellate brief as well as a reply brief responding to the Navy's appellee brief. Gordon argues (1) the district court should have held an

evidentiary hearing before granting the Navy's motion for summary judgment; (2) the Navy exposed her to the possibility of identity theft by putting her personal information on a public website; (3) the district court erred by ordering her to sign a medical release while not requiring the Navy to respond to her discovery requests; (4) the district court erred in granting summary judgment on her sexual-harassment claim; (5) the district court erred in denying her request for equitable tolling on her race-discrimination claims because her attorney was ineffective and incapacitated; and (6) the district court erred in denying her earlier-appointed attorney's request to withdraw as counsel. We subsequently granted Gordon's motion for appointment of counsel. Appointed counsel filed a brief challenging the district court's grant of summary judgment. The Navy filed a supplemental brief in response.

### III. ANALYSIS

#### A. RACE DISCRIMINATION

Gordon argues she is entitled to equitable tolling of her race-discrimination claims because Bailey's failure to file a lawsuit after withdrawing EEO Complaint I caused her claims to be untimely. We review a district court's equitable-tolling decision for an abuse of discretion. *Truitt v. Cnty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998). The equitable-tolling doctrine has been applied "only sparingly." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). The district court concluded Gordon could not show Bailey misled her by informing her he had filed the complaint when he in fact had not, and therefore Gordon was not entitled to equitable tolling because Bailey's actions constituted "garden variety neglect." *Gordon v. England*, 2012 WL 2790375, at *10.

While Gordon now claims Bailey was not capable of representing her at the time he withdrew EEO Complaint I, she offers only a 1995 report from the Tennessee Board of Professional Responsibility in which Bailey was ordered to enter treatment for drug addiction and psychiatric issues. She failed to present this report in the first instance to the district court. As a result, she has waived her right to raise this point on appeal. *See, e.g., United States v. Universal Mgmt.*

*Servs. Inc., Corp.*, 191 F.3d 750, 758 (6th Cir. 1999). Moreover, Gordon offers no evidence to support her implication that Bailey was incapable of representing her based on the Board of Professional Responsibility's seven-year-old order. Gordon fails to show the district court abused its discretion in declining to apply equitable tolling to her race-discrimination claims.

## B. HOSTILE WORK ENVIRONMENT

Gordon argues the district court erred in granting the Navy's summary-judgment motion as to the merits of her hostile-work-environment claim. We review a district court's grant of summary judgment de novo. *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012). Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Title VII prohibits an employer from requiring its employees "to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)). An employee establishes a hostile-work-environment claim by proving: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment based on her sex; (3) the harassment unreasonably interfered with her work performance and "created an objectively intimidating, hostile, or offensive work environment"; and (4) the employer is liable. *Warf v. U.S. Dep't of Veterans Affairs*, 713 F.3d 874, 878 (6th Cir. 2013). The employee can prove the third element of this claim by showing the conduct is "severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Id.* (quoting *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000)). A court may consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Warf*, 713 F.3d at 878. The Navy does not dispute Gordon is a member of a protected class, that

Edwards sexually harassed her, or that Gordon subjectively believed her work environment was hostile.

Edwards assaulted Gordon on March 9, 2001, in front of four other coworkers – Jane DeGonzaque, Susan Foster, Shannon Armbruster, and Ken Allen. Edwards grabbed Gordon from behind, wrapped his hands around her breasts, and pressed and held his genitals against Gordon's buttocks. Her coworkers did not step in and stop Edwards – in fact, DeGonzaque took a picture. Gordon reported the assault to Rossman, her supervisor, on March 26, 2001. Rossman interviewed Gordon's coworkers, all of whom denied the incident occurred in the way Gordon reported. Rossman instructed all five to apologize to Gordon.

Subsequently, Rossman obtained a copy of the photograph DeGonzaque took. Rossman stated "[t]he photograph was out of focus, but it provided an image of Nathan Edwards grabbing [Gordon] and holding her in a manner different from how he had previously described to me." R. 138-6 at 3 (Page ID # 797). On May 22, 2001, Rossman suspended Edwards for three days without pay for lying during the initial investigation and ordered him to attend a sexual-harassment-prevention class. Despite Gordon's request, Rossman did not take further action against DeGonzaque, Foster, Armbruster, or Allen.

While the conduct Gordon complains of is deplorable and unacceptable in any workplace, precedent prevents Gordon from maintaining a hostile-work-environment claim because she only points to one incident of sexual misconduct. We previously have stated a complaint like Gordon's is "more akin to a discrete act, which is decidedly not actionable as a hostile-work-environment claim." *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 708 (6th Cir. 2007) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-16 (2002)).

Gordon argues her allegations of a racially hostile work environment lend support to her sexual-discrimination claim. While we have held nonsexual conduct can constitute evidence of sexual harassment, an employee must show the acts would not have occurred but for her sex.

*Williams v. Gen. Motors Corp.*, 187 F.3d 553, 565 (6th Cir. 1999). Gordon fails to offer any evidence to establish this connection.

## C. MISCELLANEOUS MATTERS

As we noted above, Gordon also argues in her pro se appellant brief that (1) the district court should have held an evidentiary hearing before granting the Navy's motion for summary judgment; (2) the Navy exposed her to the possibility of identity theft by putting her personal information on a public website; (3) the district court erred by ordering her to sign a medical release while not requiring the Navy to respond to her discovery requests; and (4) the district court erred in denying her earlier-appointed attorney's request to withdraw as counsel. Gordon failed to raise these arguments before the district court and we will not review them for the first time on appeal. *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990) (citing *Boddie v. Am. Broad. Cos., Inc.*, 881 F.2d 267, 268 n.1 (6th Cir. 1989)).

## IV. CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's grant of summary judgment in favor of the Appellees.