NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0147n.06

No. 23-1674

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Apr 01, 2024

KELLY L. STEPHENS, Clerk

WEBSTER RASHADA,

  Plaintiff-Appellant,

v.

CORRECTIONAL OFFICER FLEGEL, *et al.*

  Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

OPINION

Before: BATCHELDER, CLAY, and DAVIS, Circuit Judges.

**CLAY, Circuit Judge.** Proceeding *pro se*, Plaintiff Webster Rashada, a Michigan state prisoner, filed a complaint under 42 U.S.C. § 1983, alleging that two correctional officers used excessive force in retaliation against him for filing previous lawsuits against other officers in the same correctional facility. Rashada stated that he sued Defendants in their official, rather than individual, capacities. After screening Rashada's complaint pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, the district court[1] *sua sponte* dismissed Rashada's claims as barred by sovereign immunity. For the reasons discussed below, we **REVERSE** the dismissal of Rashada's complaint, and **REMAND** for further proceedings consistent with this opinion.

---

[1] Rashada consented to the adjudication of the entire proceeding by a magistrate judge. Throughout this opinion, we refer to the magistrate judge as "the district court."

## I.  BACKGROUND

### A.  Factual Background

At the time of the incident described in the complaint, Rashada was a prisoner housed at the Ionia Correctional Facility ("ICF").  He alleges that two correctional officers at the ICF denied him access to his mail and assaulted him in retaliation for a previous lawsuit that he filed against other ICF officials.  *See Webster Rashada #493950 v. Unknown Sheldon*, No. 1:21-cv-919 (W.D. Mich. dismissed on Oct. 25, 2022).  Rashada claims that around 8:45 p.m. on April 8, 2022, Sergeant Morgan and Correctional Officer Flegel, the two Defendants named in this case, brought a food cart serving Rashada's meal to his cell.  Rashada noticed that Flegel also carried mail addressed to him.  He asked Flegel for the mail, but Flegel refused to give it to him.  Just after this, Morgan told Rashada:  "All the staff saw the legal documents and grievances of the lawsuit you had filed."  Compl., R. 1, Page ID #4.  Flegel then "smashed" Rashada's hand between the food cart and the door to his cell, causing Rashada's hand to become stuck.  Compl. Att. 1, R. 1-1, Page ID #10.  Morgan punched Rashada's hand repeatedly and bent his fingers back until he cried out in pain.  Then, Morgan told Rashada:  "Now file or write a grievance . . . . Your hand all busted up!"  Compl., R. 1, Page ID #4.  After this alleged attack, Rashada experienced swelling, pain, and discoloration in his hand, and he "severely suffered mentally."  *Id.* at Page ID #4–5.

Rashada pursued his claims through the prison grievance process.  After reviewing video footage that purportedly showed Rashada hitting and attempting to push the food delivery cart, the prison found that the correctional officers had not used excessive force.

### B.  Procedural History

On May 19, 2023, acting *pro se*, Rashada filed his complaint using a form complaint from the United States District Court for the Western District of Michigan.  He asserted that Flegel and

Morgan violated his First and Eighth Amendment rights, and requested $800,000 in compensatory damages and $800,000 in punitive damages. He further requested a declaratory judgment that the "acts and [o]missions described herein violated" his rights under the Michigan and United States Constitutions, and requested the fees and costs of bringing the civil action "pursuant to [42] U.S.C. § 1983." Compl., R. 1, Page ID #6. In response to a prompt on the form complaint asking whether Rashada intended to sue Defendants in their official or personal capacities—"[o]fficial and/or personal capacity?"—Rashada stated "suing official." *Id.* at Page ID #3. Rashada also attached to his complaint his completed prison grievance form, the prison's response to his initial grievance, and its response to Rashada's two appeals of the grievance process.

After an initial screening, the district court dismissed Rashada's complaint *sua sponte*. *See* 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c). The district court dismissed Rashada's claims for monetary damages because Rashada had indicated that he brought his suit against Flegel and Morgan in their official capacities. Because a suit for damages against an individual in his or her official capacity is the equivalent of a suit against the governmental entity, the district court construed the complaint as asserted against the Michigan Department of Corrections. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). And, because the Eleventh Amendment bars § 1983 suits for damages in federal court against state entities that have not consented to suit, the district court dismissed Rashada's claims for monetary damages against Flegel and Morgan based on sovereign immunity. *See Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013). The district court explained that, had Rashada "named Defendants in their personal capacities, [it] would not dismiss this matter on screening, as Plaintiff has stated a plausible Eighth Amendment excessive force claim." Opinion, R. 7, Page ID #42.

The district court then addressed Rashada's claim for declaratory relief. As it acknowledged, state officials sued in their official capacity do not receive Eleventh Amendment immunity against requests for non-monetary relief if they meet the *Ex parte Young* exception to sovereign immunity. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908). However, to meet this exception, the relief sought must remedy a prospective harm. *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020). Because Rashada had been transferred from the correctional facility where the events giving rise to his complaint occurred, the court dismissed Rashada's claim for declaratory relief as similarly barred by sovereign immunity because he did not seek relief from future harm. The court dismissed Rashada's complaint with prejudice. Through counsel, Rashada timely appealed the dismissal of his complaint. Because they were never served in the district court, Defendants Flegel and Morgan are not parties to this appeal. *See Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418, 418 (6th Cir. 2007).

## II.    DISCUSSION

On appeal, Rashada first argues that the district court erred by dismissing his complaint at all because the district court should have applied the "course of proceedings" test and construed his complaint as against Defendants in their individual capacities. Alternatively, he argues that the district court erred in dismissing his complaint with prejudice and without leave to amend. Although we disagree with his first argument, we agree with his second, and explain our reasoning below.

### A.  Course of Proceedings Test

This Court reviews the *sua sponte* dismissal of claims pursuant to 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c) *de novo*. *Wershe v. Combs*, 763 F.3d 500, 505 (6th Cir. 2014). *Pro se* complaints should be "liberally construed" and "however inartfully pleaded, must be held to less

- 4 -

stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

As the district court correctly concluded, the Eleventh Amendment bars § 1983 suits for damages against state officials in their official capacities. *See Harrison*, 722 F.3d at 771; *Matthews*, 35 F.3d at 1049. On appeal, Rashada does not challenge this conclusion. Instead, he argues that the district court erred by failing to construe his complaint as suing Flegel and Morgan in their individual capacities.

When a complaint does not clearly allege in which capacity defendants are sued, this Circuit applies a "course of proceedings" test to determine capacity. *Moore v. City of Harriman*, 272 F.3d 769, 773 (6th Cir. 2001) (en banc). This test considers whether the pleadings as a whole put the defendant on notice that the plaintiff intended to hold him or her personally liable for damages. *Id.* To achieve this goal, it examines "the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims for qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability." *Id.* at 772 n.1.

Although Rashada's *pro se* complaint contains certain indicia of an individual capacity suit, the course of proceedings test is inapplicable when the complaint clearly states the capacity in which defendants are sued. This Court's *en banc* decision in *Moore*, which definitively recognized the course of proceedings test, stated that it applies "[w]hen a § 1983 plaintiff fails to affirmatively plead capacity in the complaint." *Id.* at 773; *see also Shepherd v. Wellman*, 313 F.3d 963, 967–68 (6th Cir. 2002) ("Where no explicit statement appears in the pleadings, this Circuit uses a 'course of proceedings' test to determine whether the § 1983 defendants have received notice of the plaintiff's intent to hold them personally liable."); *Goodwin v. Summit Cnty.*, 703 F.

App'x 379, 382–83 (6th Cir. 2017) ("Because [the plaintiff] affirmatively pleaded capacity in the original complaint, we need not look to the course of proceedings to determine whether the [defendants] had sufficient notice of their potential for individual liability.").

Rashada claims that this Court's decision in *Rodgers v. Banks* applied the course of proceedings test when the plaintiff's complaint affirmatively designated the capacity in which the defendant was sued.  344 F.3d 587 (6th Cir. 2003).  But the operative complaint in *Rodgers* did not contain an explicit statement as to capacity.  In that case, the initial complaint only raised a Title VII claim, but the plaintiff later amended it to include a § 1983 claim.  *Id.* at 594.  The amended complaint incorporated by reference the statement from the previous complaint that "Defendant was being sued in her 'official capacity,'" but it was "otherwise silent as to whether" the defendant was "sued in her official or individual capacity."  *Id.*  Because the operative complaint in *Rodgers* did not explicitly contain a statement as to capacity, but merely incorporated statements from the previous complaint, *Rodgers* does not stand for the broad proposition that the course of proceedings test applies to a complaint that does make such a clear statement of capacity.

Even to the extent that *Rodgers* could be read to apply the course of proceedings test to complaints with clear statements of capacity, it does not aid Plaintiff's position.  Despite the fact that the plaintiff in *Rodgers* had requested monetary damages, a sign of an individual capacity suit, we emphasized the clear statement in the original complaint that the plaintiff sued the defendant in her official capacity when conducting the course of proceedings test.  *Id.*  We found that this clear statement, as well as other indicia of an official capacity suit, did not put the defendant on notice that she was being sued in her individual capacity.  *Id.* at 594–95.

In contrast to the arguably ambiguous amended complaint in *Rodgers*, Rashada's complaint explicitly states that he is suing Flegel and Morgan in their official capacities.  The form

complaint contained a prompt asking "[o]fficial and/or personal capacity?", and Rashada responded "suing official." Compl., R. 1, Page ID #3. To be sure, as a *pro se* litigant, Rashada may not have known the import of the prompt on the form. Moreover, his response indicates that he may have meant to merely express that he was suing two individuals who are also officials in the correctional facility. Nevertheless, the ultimate inquiry we make when conducting the course of proceedings test is whether the defendants have sufficiently been put on notice that they will need to defend themselves in their individual capacity. *Moore*, 272 F.3d at 772 ("[W]hile it is clearly preferable that plaintiffs explicitly state whether a defendant is sued in his or her 'individual capacity,' failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice.") (citation omitted). When a complaint specifically identifies that the plaintiff brings official capacity claims, defendants will not be on notice of an individual capacity claim against them. *See Rodgers*, 344 F.3d at 594–95. And, although this Court has stated in an unpublished opinion that "[t]o the extent doubt persists" in evaluating the factors for the course of proceedings test, "this doubt should be resolved in" the *pro se* plaintiff's favor, Rashada's clear statement of capacity in his complaint does not leave room for doubt. *Lindsay v. Bogle*, 92 F. App'x 165, 169 (6th Cir. 2004). Thus, the district court did not err in construing his complaint as asserted against Defendants in their official capacities.

### B. Dismissal Without Leave to Amend

Rashada alternatively argues that the district court erred by dismissing his complaint with prejudice, thereby preventing him from filing an amended complaint. He makes two distinct arguments on this point. First, he claims that dismissal with prejudice, and, therefore, without leave to amend, was improper because the district court identified an amendment that would cure his complaint's deficiencies. Second, he contends that dismissal with prejudice was improper

because the only basis for dismissal was jurisdictional. Because we agree that the district court should have permitted him leave to amend, we need not address his second charge of error.

The decision to dismiss a complaint with prejudice and without leave to amend is reviewed for an abuse of discretion. *Lipman v. Budish*, 974 F.3d 726, 740 (6th Cir. 2020). Rule 15(a)(2) of the Federal Rules of Civil Procedure states that courts should "freely give leave" to amend "when justice so requires." Generally, a district court does not abuse its discretion when it fails to grant leave to amend when such leave was never requested. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 438 (6th Cir. 2008). However, we have recognized that dismissing claims without permitting leave to amend can sometimes violate "the well-established preference for allowing claims to be decided on their merits where possible." *Burkeen v. A.R.E. Accessories, LLC*, 758 F. App'x 412, 416 (6th Cir. 2018) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). More specifically, "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Newberry v. Silverman*, 789 F.3d 636, 646 (6th Cir. 2015) (citation omitted) (alteration in original); *see also PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 698 (6th Cir. 2004), *abrogated on other grounds by Frank v. Dana Corp.*, 646 F.3d 954, 961 (6th Cir. 2011) ("[W]hen a motion to dismiss a complaint is granted, courts typically permit the losing party leave to amend.").

That Rashada's complaint was dismissed pursuant to screening under the PLRA does not change this analysis. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[U]nder Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA."). Instead, consistent with the liberal treatment afforded to *pro se* plaintiffs, we have previously recognized that district courts should afford *pro se* plaintiffs

special consideration when granting leave to amend complaints. *See Berndt v. Tennessee*, 796 F.2d 879, 882 (6th Cir. 1986); *see also Brown v. Matauszak*, 415 F. App'x 608, 614–15 (6th Cir. 2011) ("Particularly where deficiencies in a complaint are attributable to oversights likely the result of an untutored pro se litigant's ignorance of special pleading requirements, dismissal of the complaint without prejudice is preferable." (quoting *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990))).

We have previously reversed the dismissal of a *pro se* plaintiff's complaint without leave to amend under similar circumstances. In *Berndt*, a *pro se* plaintiff listed the state of Tennessee as a defendant, but, as the district court properly found, the Eleventh Amendment barred this kind of suit against a state. 796 F.2d at 881. We nevertheless reversed the dismissal and remanded with instructions to permit amendment because it was clear that the plaintiff could add new defendants who were not immune from suit. *Id.* at 882–84. The plaintiff in *Berndt* had not requested leave to amend his complaint, and, as we have continued to acknowledge, "[t]here is currently no rule of law in this circuit that requires the district court to give *sua sponte* a *pro se* plaintiff leave to amend his complaint absent a request." *Id.* at 882. But given the plaintiff's *pro se* status and his ability to cure the deficiencies in his complaint, we found remand appropriate because "[i]t would be a miscarriage of justice to preclude this *pro se* plaintiff from seeking redress for his alleged injuries on a procedural defect." *Id.*

We have reaffirmed this approach in more recent unpublished decisions addressing similar situations. For example, in *Brown*, the *pro se* plaintiff failed to request leave to amend after defendants filed a motion to dismiss, and the district court dismissed the plaintiff's complaint with prejudice. 415 F. App'x at 614. Because it was "very clear" from information presented on appeal that the plaintiff could cure his complaint's deficiencies through amendment, we remanded the

case to the district court to provide the *pro se* plaintiff with leave to amend his complaint. *Id.* at 616–17. In *Lucas v. Chalk*, we similarly remanded to the district court with instructions to permit amendment when factual issues raised in appellate briefing made it clear that a *pro se* plaintiff whose complaint was dismissed after PLRA screening could state a claim. 785 F. App'x 288, 292 (6th Cir. 2019); *see also Gordon v. England*, 354 F. App'x 975, 981 (6th Cir. 2009) (remanding with instructions to allow *pro se* plaintiff leave to amend because she was "likely . . . unaware" of the need to request leave to amend).

In this case, the district court acknowledged that "[i]f Plaintiff had named Defendants in their personal capacities, [it] would not dismiss this matter on screening, as Plaintiff has stated a plausible Eighth Amendment excessive force claim." Opinion, R. 7, Page ID #42. That is, but for a procedural pleading deficiency in Rashada's *pro se* complaint, the district court would have found that he stated a claim for relief as to at least one of his claims. Ordinarily, a plaintiff would have the opportunity to cure such a procedural deficiency without court involvement. Indeed, had the deficiency been raised by Defendants in response to Rashada's complaint after having been served—or even if Rashada later discovered it on his own—he would have been entitled to amend his complaint "once as a matter of course" within 21 days of serving it or 21 days after being served with a responsive pleading or motion to dismiss. Fed. R. Civ. P. 15(a)(1). We are aware of no authority suggesting that PLRA screening is meant to foreclose this normal operation of Rule 15. Given Rashada's *pro se* status in the district court and the highly technical nature of pleading official and personal capacity claims, in the "interest of justice," Rashada should be permitted to amend his complaint and pursue his claims against Defendants in their proper capacities. *Gordon*, 354 F. App'x at 982.

### III.    CONCLUSION

For the reasons set forth above, we **REVERSE** the dismissal of the complaint and **REMAND** with instructions to grant Rashada leave to amend his complaint.